UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS HERRERA,<br><br>Plaintiff,<br><br>v.<br><br>C & J CLARK AMERICA INC, et al.,<br><br>Defendants. | Case No. 25-cv-07072-JSC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: Dkt. No. 12 |

\\

\\

\\

Plaintiff brings this putative class action alleging various wage and hour claims under California state law.  (Dkt. No. 1-2.)[1]  Plaintiff originally filed this suit in Alameda County Superior Court, then Defendants removed the case to federal court based on the Class Action Fairness Act (CAFA).  (Dkt. No. 1.)  Now pending before the Court is Plaintiff's motion to remand.  (Dkt. No. 12.)  Plaintiff argues Defendants have not met their burden of proving the amount in controversy exceeds $5 million as required by CAFA.

After considering the parties' written submissions, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), and DENIES Plaintiff's motion.  Defendants have met their burden of proving, by a preponderance of the evidence, the class size is at least 100 members, there is minimal diversity of parties, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff's requested wage statement penalties and waiting time penalties alone place at least $7 million in controversy, and the Court cannot consider

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

the statutes of limitations on these penalties to reduce the amount in controversy. *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020).

**BACKGROUND**

Defendants are corporate residents of Pennsylvania and Massachusetts. (Dkt. No. 1-1 ¶ 3.) Plaintiff and putative class members are California residents who worked for Defendants for the four years preceding the filing of the Complaint. (Dkt. No. 1-2 ¶¶ 1, 4, 15-22.)

On July 9, 2025, Plaintiff filed the instant lawsuit in state court alleging causes of action under California's wage and hour laws for (1) failure to pay minimum wages; (2) failure to pay wages and overtime under Labor Code § 510; (3) failure to provide meal periods under Labor Code § 226.7; (4) failure to provide rest periods under Labor Code § 226.7; (5) failure to reimburse necessary business expenditures under Labor Code § 2802; (6) violation of Labor Code § 226(a); (7) failure to keep required payroll records under Labor Code §§ 1174 and 1174.5; (8) penalties pursuant to Labor Code § 203; and (9) unfair competition under Business and Professions Code § 17200. (Dkt. No. 1-2.)

Defendants filed the Notice of Removal on August 20, 2025. (Dkt. No. 1.) In the Notice, Defendants contend removal is proper under CAFA, 28 U.S.C. § 1332(d)(2), because the case has more than 100 putative class members, the amount in controversy exceeds $5,000,000, and Plaintiff is a citizen of California whereas Defendants are citizens of Pennsylvania and Massachusetts. (Dkt. No. 1 ¶¶ 6-25.) Defendants estimate the amount in controversy is at least $71,926,040.45.[2] (Dkt. No. 1 at 5-7.) Plaintiff's motion for remand contends removal is improper because the amount in controversy is less than $5,000,000.

**DISCUSSION**

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and

---

[2] Defendants' Notice of Removal noted Plaintiff's prayer for attorneys' fees, as well as Plaintiff's first, second, and seventh causes of action increase the amount in controversy, but did not estimate how much those items placed in controversy. (Dkt. No. 1 at 7 n.2.) Defendants provided those estimates in its opposition to Plaintiff's motion to remand. (Dkt. No. 13 at 10-15.)

costs." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)). Defendants, as the removing parties, bear the burden of establishing these elements, that is, a prima facie case of removal jurisdiction. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007); *see also id.* at 1024 (holding that in a CAFA case the removing party bears the burden of establishing federal jurisdiction under 28 U.S.C. § 1332(d)(2)). Here, there is no dispute the class size is at least 100 members or the minimal diversity requirement is met. The parties dispute whether the amount in controversy exceeds $5 million.

"Generally, the amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). Here, the complaint is silent as to the amount in controversy because Plaintiff does not seek a specific dollar amount in damages and penalties. (Dkt. No. 1-2 Prayer for Relief ¶¶ 2-17.) "A defendant's amount in controversy allegation is normally accepted when invoking CAFA jurisdiction, unless it is 'contested by the plaintiff or questioned by the court.'" *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014)). When, as here, a plaintiff contests a defendant's allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied[.]" *Dart Cherokee*, 574 U.S. at 88.

"The amount in controversy is the amount at stake in the underlying litigation." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (cleaned up). "The amount in controversy is not a prospective assessment of a defendant's liability," *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018), nor does the amount in controversy refer to "likely or probable liability; rather, it refers to possible liability." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020). "Among other items, the amount in controversy includes damages (compensatory, punitive, or otherwise)[.]" *Fritsch*, 899 F.3d at 793.

**A. The Parties' Estimates and Evidence**

To estimate Plaintiff's class size and damages, Defendants submitted a declaration from Chris Melendez, the Vice President and Global Head of Defendants' Human Resources Operations. (Dkt. No. 1-1.) Mr. Melendez's team collected and summarized payroll data for

3

1   Defendants' hourly employees in California who were issued paychecks during the class period of
2   July 2021 through August 2025. (*Id.* ¶ 4.) As relevant here, Defendants' payroll data showed
3   during the class period: (1) Plaintiff's classes consist of 1,058 employees, including 911 former
4   employees and 147 active employees; (2) class members were paid on a weekly basis, so the class
5   period consists of approximately 63,000 workweeks across all class members; (3) on average, the
6   former employees earned $16.41 an hour and the active employees earned $20.32 an hour; (4) on
7   average, the former employees worked 19.50 hours per week and the active employees worked
8   23.18 hours per week. (*Id.* ¶ 4.)

9   Based on these figures, Defendants' Notice of Removal estimates the amount in
10  controversy is $71,926,040.45, not including attorneys' fees or Plaintiff's first, second, or seventh
11  causes of action. (Dkt. No. 1 at 5-7.) Defendants estimated: (1) $1,076,193 in damages for meal
12  break violations, assuming one violation per week across 1,058 employees; (2) $1,076,193 in
13  damages for rest period violations, under the same assumptions, (3) $420,000 in damages for cell
14  phone expenses that were not reimbursed, (4) $4,232,000 in penalties for providing employees
15  with inaccurate wage statements, (5) $2,915,154.45 in waiting time penalties for former
16  employees who did not timely receive pay following separation, and (6) $62,206,500 in penalties
17  recoverable under California's Private Attorneys General Act ("PAGA"). (*Id.*) Plaintiff's motion
18  argued PAGA penalties cannot be aggregated to satisfy the CAFA's amount-in-controversy
19  requirement, which Defendants did not dispute, so the Court will not include PAGA penalties in
20  the amount in controversy.

21  Based on Defendants' payroll data, Plaintiff estimates the amount in controversy is
22  $4,977,657.71. (Dkt. No. 12 at 12.) For purposes of his motion, Plaintiff accepts Defendants'
23  estimated number of employees, their average wages, and the approximation they worked 63,000
24  workweeks. (Dkt. No. 12 at 8.)[3] With these numbers as a starting point, Plaintiff estimated the

---

[3] Plaintiff objects to the declaration of Andrew Mailhot, in which Mr. Mailhot attests to certain calculations of Defendants' timesheet data. (Dkt. No. 14 at 5-6.) Mr. Mailhot purported to calculate only "what percentage of shifts were longer than five hours in duration and, therefore, meal-break eligible." (Dkt. No. 13-2 ¶ 6.) The Court's order does not rely on Mr. Mailhot's calculation, so Plaintiff's objection is SUSTAINED.

4

amount in controversy after (1) challenging and replacing Defendants' assumptions about the number of meal and rest periods, violation rates, and business expenses; and (2) reducing the amount in controversy for claims that are subject to a statute of limitations. (*Id.* at 8-12.) After making deductions from Defendants' estimate, Plaintiff agrees the amount in controversy is at least $4,977,657.71. (Dkt. No. 12 at 12.)

**B. Defendants' Evidence Shows the Amount in Controversy Exceeds $5 Million**

The Court will only address the statute of limitations issue because it disposes of Plaintiff's motion. Defendants estimate wage statement penalties and waiting time penalties add at least $7 million in controversy over the four-year class period. (Dkt. No. 1 ¶¶ 13g, h.) Plaintiff does not dispute Defendants' estimates of the amount each employee could recover in penalties. (Dkt. No. 12 at 11-12.)[4] Instead, Plaintiff asserts a one-year statute of limitations applies to wage statement penalties, meaning only one-fourth of class members can recover penalties. (Dkt. No. 12 at 11.) So, Plaintiff estimates the amount in controversy is $1,058,000 for wage statement penalties, *i.e.*, one-fourth of Defendants' estimate. (Dkt. No. 1 ¶ 13g; Dkt. No. 12 at 11.) Similarly, Plaintiff asserts a three year-statute of limitations applies to waiting time penalties, which warrants an amount-in-controversy estimate of $2,186,365.84, *i.e.*, three-fourths of Defendants' estimate. (Dkt. No. 12 at 12 (citing *Pineda v. Bank of America, N.A.*, 50 Cal.4th 1389, 1393 (2010)).)

Accordingly, CAFA's $5 million amount-in-controversy requirement is satisfied because Defendants' uncontested evidence shows Plaintiff's requested penalties place at least $7 million in controversy, and under Ninth Circuit law, the Court cannot consider a potential statute of limitations defense when calculating the amount in controversy. "It [is] improper for [a] district court to consider [Defendant]'s potential statute of limitations defense … to determine the amount in controversy" because "[t]he amount in controversy represents only the amount at stake in the underlying litigation, not the likely liability." *Greene*, 965 F.3d at 773–74 (cleaned up). In *Greene*,

---

[4] For wage statement penalties, Plaintiff seeks penalties of up to $4,000 per employee under California Labor Code § 226(a). (Dkt. No. 1-2 ¶ 64.) Defendants' estimate multiplies the $4,000 maximum penalty across 1,058 employees. (Dkt. No. 1 ¶ 8.) The parties agree waiting time penalties place an estimated $3,199.95 in controversy per employee. (*See* Dkt. No. 1 ¶ 13h; Dkt. No. 12 at 12.)

the defendant removed a putative class action to federal court and the plaintiff argued the amount in controversy was not met because a three-year statute of limitations precluded a punitive damages award for unnamed class members. *Id.* at 770–71. The court ruled it was improper to consider a potential statute-of-limitation affirmative defense as applied to unnamed class members because "the 'strength of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation.'" *Id.* at 774 (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928 (9th Cir. 2019)) (italics in original). "In other words, 'just because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense.'" *Id.* (citing *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010)); *see also Jauregui*, 28 F.4th at 994 n.6 (holding, in a putative wage and hour class action, a plaintiff's "reliance on various statutes of limitations to challenge [a defendant]'s calculations … confuses the amount in controversy with the amount that will ultimately be recovered.") Plaintiff cites no Ninth Circuit case law to the contrary. (Dkt. No. 14 at 7-8.)[5]

Plaintiff's argument "*Greene* … does not hold that incorporating the statute of limitations when calculating the amount in controversy is improper" (Dkt. No. 14 at 7) is unavailing. *Greene* plainly held "[t]he district court erred in considering the merits of [Defendant]'s affirmative defense to determine the amount in controversy." 965 F.3d at 774. Despite this clear holding, Plaintiff asserts "[t]he *Greene* court itself disclaims such a conclusion" when *Greene* stated:

> Greene argues that courts can inquire into potential recovery in assessing the amount in controversy, citing *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986), and *Morris v. Hotel Riviera, Inc.*, 704 F.2d 1113, 1115 (9th Cir. 1983). But in those cases, the underlying statute itself limited the damages available, and there was no need to delve into the merits of the defense

---

[5] *Soto v. Greif Packaging LLC*, 2018 WL 1224425 *5 (C.D. Cal. 2018) is unpersuasive because it pre-dates *Greene* and did not cite any Ninth Circuit case supporting the holding "[w]hen determining the amount in controversy, the Court cannot disregard the applicable statute of limitations." *Id.* at *5. Rather, *Soto* cited three district court cases for that holding, *id.*, none of which cited a Ninth Circuit case holding a statute of limitations can be considered for amount-in-controversy purposes. *See Feao v. UFP Riverside, LLC*, 2017 *4 (C.D. Cal. Jun. 29, 2017); *Phan v. Sears, Roebuck & Co.*, 2016 WL 1408057 *2 (C.D. Cal. Apr. 11, 2016); *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512 *3 (C.D. Cal. Mar. 3, 2015).

6

> or case. In contrast, evaluating a potential statute of limitations defense involves a fact-based analysis of the merits, especially in a case such as this where (1) Greene's allegations involve fraud and concealment and (2) his complaint alleged that all statutes of limitations should be tolled.

(Dkt. No. 14 at 7 (citing *Greene*, 965 F.3d at 774)). Plaintiff emphasizes: (1) *Greene* distinguished its facts from cases where "the underlying statute itself limited the damages available," and (2) unlike Plaintiff here, the *Greene* plaintiff alleged statutes of limitations should be tolled. (*Id.*)

Plaintiff's interpretation of *Greene* is wrong on both fronts. As to Plaintiff's first argument, *Greene*'s distinctions to *Pachinger* and *Morris* undermine Plaintiff's position. *Pachinger* and *Morris* addressed situations where "a rule of law or limitation of damages limits the amount of damages recoverable," thereby making it a "legal certainty" damages will fall below the amount-in-controversy requirement. *Pachinger*, 802 F.2d at 364; *Morris*, 702 F.2d at 1115. In both cases, the "rule or measure of damages" at issue was a Nevada innkeeper statute limiting a hotel's liability to $750. *Pachinger*, 802 F.2d at 363; *Morris*, 702 F.2d at 1114. Simply put, for amount-in-controversy purposes, *Greene* distinguished a statute of limitations from a "rule or measure of damages" because the former is a merits inquiry, whereas the latter is a question of whether a rule or statute applies to a set of allegations. *Compare Pachinger*, 702 F.2d at 1115 ("[I]n the few cases involving a rule or measure of damages that limits liability, we may go beyond the pleadings for the limited purpose of determining the applicability of the rule or measure of damages."), *and Morris*, 702 F.2d at 1114 ("[T]he Innkeeper Statute clearly limits the amount of damages[.]"), *with Greene*, 952 F.3d at 774 ("[I]n those cases, the underlying statute itself limited the damages available, and there was no need to delve into the merits of the defense or case. In contrast, evaluating a potential statute of limitations defense involves a fact-based analysis of the merits[.]") Here, like the plaintiff in *Greene*, Plaintiff is asking the Court to impermissibly consider the merits of a statute of limitations as applied to unnamed class members to determine the amount in controversy.

As to Plaintiff's second argument, nothing in *Greene* suggests its holding is limited to situations where a plaintiff alleges a statute of limitations should be tolled. Rather, the paragraph quoted by Plaintiff observed, as a general matter, "a potential statute of limitations defense

7

involves a fact-based analysis of the merits," then reasoned that observation was "especially" pertinent given the plaintiff's tolling allegations. *Greene*, 965 F.3d at 774. Additionally, the Ninth Circuit since *Greene* has cautioned a "[p]laintiff's reliance on various statute of limitations to challenge [a defendant]'s calculations … confuses the amount in controversy with the amount that will ultimately be recovered." *Jauregui*, 28 F.4th at 994 n.6. *Jauregui* did not mention whether its plaintiff alleged a tolling of statute of limitations, *see generally id.*, presumably because tolling allegations were not necessary to *Greene*'s holding.

Finally, Plaintiff's argument statutes of limitations make recovery in excess of $5 million a "legal impossibility" (Dkt. No. 12 at 12) is unavailing. Plaintiff's cited cases are inapposite because neither addressed the question here, namely whether an affirmative defense should be considered for amount in controversy purposes. *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395 (9th Cir. 2010) did not address a statute of limitations, let alone hold such a defense makes recovery "legally impossible." *Id.* at 399. Likewise, *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004 (N.D. Cal. 2002) held damages must be "recoverable" to be part of the amount in controversy, which has nothing to do with affirmative defenses because "recoverable" in the context there meant "authorized by" a statute. *See id.* at 1009 (collecting cases where "treble damages authorized by state law may be included in determining the amount in controversy"). In any event, for the Court to conclude it is "legally impossible" for Plaintiff to recover more than $5 million in penalties "would smuggle in merits-based arguments into the jurisdictional inquiry, which is supposed to be simple and mechanical." *Greene*, 965 F.3d at 774 (cleaned up).

Accordingly, Defendants have met their burden of showing the amount in controversy exceeds $5 million, as required by the Class Action Fairness Act.

## CONCLUSION

For the reasons set above, Defendants have shown, by a preponderance of the evidence, the class size is at least 100 members, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million. So, the Court DENIES Plaintiff's motion to remand. The initial Case Management Conference set for Tuesday, November 25, 2025 at 2:00 pm remains on calendar.

This Order disposes of Docket No. 12.

**IT IS SO ORDERED.**

Dated: November 13, 2025

                                                       JACQUELINE SCOTT CORLEY
                                                       United States District Judge